BERNARD FOX *v.* JOHN W. WALSH.

To recover in a redhibitory action, the purchaser must prove that the alleged vice or malady existed before the sale to him, unless it makes its appearance within the three days immediately following the sale ; in which case, it will be presumed to have existed before. C. C. 2508.

APPEAL from the District Court of the First District, *Buchanan*, J.

*Mitchell*, for the appellant.

*Benjamin*, for the defendant.

MORPHY, J. This is a redhibitory action, in which the plaintiff seeks to recover the price of a slave named Permili, on the allegation, that prior to, and at the time of the sale to him, she was affected with a confirmed and incurable consumption, of which she died about ten months after the sale. There was a judgment below in favor of the defendant, from which the plaintiff took this appeal.

The buyer, who institutes a redhibitory action, must prove, that the alleged vice or malady existed before the sale to him, unless it makes its appearance within the three days immediately following the sale, in which case it is presumed to have existed before. Civil Code, art. 2508.

The sale to the plaintiff took place on the 17th of April, 1839. The witnesses of both plaintiff and defendant agree in representing the slave Permili, or Amelia, as having been at that time a stout, fat, and healthy looking girl ; and persons who knew her, while she was owned by the defendant, declare, that she was always apparently in perfect health, and was never sick to their knowledge. Dr. Stone, who was called by the plaintiff to see the girl, towards the end of 1839, or in the beginning of 1840, found

her then suffering from a violent cough, pains in her breast, fever, &c. He understood from Mrs. Fox, that the slave had been afflicted with a violent cough for two or three weeks previous, and that she had always discharged her duties as a servant, up to the period when she was supposed to have taken cold. He thought, that medical aid should have been procured at an earlier period, but the plaintiff stated, as a reason for not having sooner called in a physician, that they thought it a mere cold. He attended on her afterwards at the defendant's house, two or three weeks before her death. From what he saw, Dr. Stone declared, that he had no doubt that the disease was constitutional; that, from the result of the disease, he believed, that tubercles existed previously in the lungs, and that from a violent cold, inflamation followed, and the tubercles softened down and produced abscesses, which resulted in death; that it is often the case that tubercles remain dormant giving no evidence of the disease; that inflamation, from any cause, will develope them suddenly, and that they will terminate in consumption; but that he could not say positively, from what he saw, that tubercles existed in the slave in question, in April, 1839; he added that a person may live with tubercles in their lungs, arrive at a mature age, and then die of another disease than consumption, &c.

Dr. Davézac visited the girl shortly after the sale. She had a cough which, yielding to treatment, induced him to discontinue his visits. He cannot tell whether the disease of which Permili died, was constitutional or not, as he did not examine her, having at the time no reason to suspect, that she had any thing more than a cough; that tubercles properly so called, cannot exist in the lungs, unless hereditary, but that death may be occasioned from consumption arising from cold or accidental causes, without tubercles in the lungs; that physicians may, by the nature of the expectoration, discover frequently whether tubercles exist in the lungs without autopsy, but these indications are deceptive, and may lead to the belief, that tubercles exist, when there are none, &c.

This testimony leaves it doubtful whether the malady of which the slave died, existed previous to the sale. It broke out long after its date, and after the girl had had a bad cold for two or three

weeks. The physician who was then called, professes himself unable to say whether the tubercles, supposed to be the cause of the disease, existed in April, 1839 ; and the other gentleman who was examined, informs us, that the indications by which physicians believe, that they can ascertain the existence of tubercles without autopsy, are deceptive, and very apt to mislead. These doubts might have been removed by a *post mortem* examination, but none took place. In the absence of any positive proof of the pre-existence of the disease, and with the evidence the inferior Judge had before him of the apparently sound, and healthy condition of the girl at the time of the sale, we cannot say, that he erred in the conclusion at which he arrived.

<em>Judgment affirmed.</em>